UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **JOSHUA MARTEZ BROWN**, <br><br> Petitioner, <br><br> vs. <br><br> **WILLIE SMITH**, <br><br> Respondent. | 2:17-CV-12097 <br><br> HON. TERRENCE G. BERG <br><br> **OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS*** |

Petitioner Joshua Martez Brown, a state prisoner in custody of the Michigan Department of Corrections, filed a *pro se* application for the writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pet., ECF No. 1. He challenges his Wayne County, Michigan convictions for second-degree murder, Mich. Comp. Laws § 750.317, assault with intent to commit murder, Mich. Comp. Laws § 750.83, and possession of a firearm during the commission of a felony ("felony firearm"), Mich. Comp. Laws § 750.227b. Petitioner claims that: (1) his right to a speedy trial was violated; (2) there was insufficient evidence at trial to support his convictions; (3) the prosecutor allowed a witness to give perjured testimony; (4) his right to a fair trial was violated when the trial court

admitted his cellphone in evidence; (5) he was not brought before a judge or magistrate within 48 hours of his warrantless arrest; and (6) his trial attorney was ineffective because he failed to object to a defective complaint and warrant.  Pet., ECF No. 1, PageID.51, 16.  Respondent Willie Smith argues through counsel that Petitioner's claims are procedurally defaulted, not cognizable on habeas review, and meritless. Answer in Opp'n to Pet., ECF No. 7, PageID.111-113.  The Court agrees that Petitioner's claims do not warrant habeas relief.  Accordingly, the Court will deny the habeas petition.

# I. BACKGROUND

The Michigan Court of Appeals summarized the basic facts in Petitioner's case as follows:

> Defendant's convictions arise from a shooting at 19481 West Ferguson Street in Detroit.  Several shots were fired into a house occupied by Almanda Talton and her 12–year–old daughter, Kadeja Davis.  One of the shots struck Davis in her head, causing her death.  Defendant was charged with first-degree premeditated murder, MCL 750 .316(1)(a), for the shooting death of Davis, assault with intent to commit murder with respect to Talton, and felony-firearm.  The prosecution's theory at trial was that the shooting was related to a dispute over a cell phone that belonged to defendant's mother, Heather Brown, and which Talton was suspected of taking from a tax office where Heather Brown worked. The defense did not dispute that defendant confronted Talton about the cell phone but argued that there was no evidence that he was the person who fired the gunshots.
>
> Defendant originally stood trial in August and September 2012. However, the trial court ordered a mistrial when the jury was

> unable to reach a unanimous verdict.  At defendant's second trial
> in November and December 2013, the jury convicted defendant of
> the lesser offense of second-degree murder and the charged offenses
> of assault with intent to commit murder and felony-firearm.

*People v. Brown*, No. 320408, 2015 WL 6482928, at *1 (Mich. Ct. App. Oct. 27, 2015).[1]  On January 7, 2014, the trial court sentenced Petitioner to prison for a term of twenty-four to fifty years for the murder conviction, a concurrent term of fourteen to thirty years for the assault conviction, and a consecutive term of two years for the felony-firearm conviction. Sentence Tr., ECF No. 8-35, PageID.2993.

Petitioner raised his first four habeas claims through counsel in an appeal of right.  In a *pro se* supplemental brief, he raised his fifth and sixth claims.  The Michigan Court of Appeals rejected all his claims and affirmed his convictions.  *Brown*, 2015 WL 6482928.  Petitioner raised the same claims in the Michigan Supreme Court, which denied leave to appeal on June 28, 2016.  *People v. Brown*, 880 N.W.2d 237 (Mich. 2016). On June 26, 2017, Petitioner filed his habeas petition.

## II.  LEGAL STANDARD

28 U.S.C. § 2254(d) provides that:

---

[1] The state court's summary of the case is accurate and supported by the record except for its statement that Petitioner did not dispute confronting Talton about the phone.  Petitioner presented an alibi defense and argued in the alternative that, even if he was the person who confronted Talton at her home, there was no testimony that he fired the gunshots or possessed a gun on the night of the crimes.

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law, or if the state court decides a case differently from the Supreme Court on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411.

"A federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system."

*Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  Section 2254(d) "thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'"  *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997), and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)).  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Id.* at 102 (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)).  Furthermore, "[u]nder § 2254(d), a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision . . . and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court."  *Id.*

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision."  *Andrade*, 538 U.S. at 71-72 (citing *Williams*, 529 U.S. at 405, 413); *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on

numerous occasions that it is not 'an unreasonable application of' 'clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court"). Further, "'a determination of a factual issue made by a State court shall be presumed to be correct,' unless rebutted by 'clear and convincing evidence.'" *Holland v. Rivard*, 800 F.3d 224, 242 (6th Cir. 2015) (quoting 28 U.S.C. § 2254(e)(1)), *cert. denied*, 136 S. Ct. 1384 (2016). Finally, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## III. DISCUSSION

### A. Speedy Trial

Petitioner alleges first that his constitutional right to a speedy trial was violated because his second trial commenced more than a year after his first trial and twenty-one months after his arraignment. Pet., ECF No. 1, PageID.51, 86. More specifically, Petitioner asserts that he was arraigned on February 5, 2012, his first trial commenced on August 28, 2012, and his second trial commenced on November 14, 2013. *Id.*, PageID.86; *see also* the Wayne County Register of Actions, ECF No. 8-1, PageID.192-194. Petitioner alleges that he languished in jail that entire time. Pet., ECF No. 1, PageID. 86.

The Michigan Court of Appeals reviewed Petitioner's speedy trial claim for "plain error" affecting substantial rights because Petitioner did

6

not preserve his claim by raising it in the trial court. *Brown*, 2015 WL 6482928, at *1. Respondent, therefore, argues that the claim is procedurally defaulted. ECF No. 7, PageID.111, 116, 128-132.

In the habeas context, a procedural default is "a critical failure to comply with state procedural law." *Trest v. Cain*, 522 U.S. 87, 89 (1997). Pursuant to the related doctrine, "a federal court will not review the merits of [a state prisoner's] claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012). "This rule was 'designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism.'" *Hugueley v. Mays*, 964 F.3d 489, 495 (6th Cir. 2020) (quoting *Martinez*, 566 U.S. at 9).

In the Sixth Circuit, determining whether a federal habeas petitioner's claim has been procedurally defaulted is a four-step inquiry. *Kelly v. Lazaroff*, 846 F.3d 819, 828 (6th Cir. 2017).

> [A] habeas petitioner's claim will be deemed procedurally defaulted if each of the following four factors is met:  (1) the petitioner failed to comply with a state procedural rule; (2) the state courts enforced the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner has not shown cause and prejudice excusing the default.

*Henderson v. Palmer*, 730 F.3d 554, 560 (6th Cir. 2013) (quoting *Jalowiec v. Bradshaw*, 657 F.3d 293, 302 (6th Cir. 2011)). These four factors are satisfied in this case.

First, there is a relevant state procedural rule, which requires "[a] defendant [to] make a 'formal demand on the record' to preserve a speedy trial issue for appeal." *People v. Cain*, 605 N.W.2d 28, 39 (Mich. Ct. App. 1999) (citing *People v. Rogers,* 192 N.W.2d 640 (Mich. Ct. App. 1971)). Petitioner violated this rule by not making a formal speedy trial demand in the trial court. In fact, at a special pretrial hearing held more than a year after his first trial ended in a mistrial, Petitioner stated that he had no objections to the second trial starting on November 14, 2013. *See* 10/3/13 Special Pretrial Tr., ECF No. 8-21, PageID.1466.

Second, the Michigan Court of Appeals was the only state court to issue a reasoned decision disposing of Petitioner's claim,[2] and it enforced the rule by stating: "[B]ecause defendant neglected to raise the purported speedy trial violation in the trial court, we review his unpreserved claim only to ascertain if any plain error affected his substantial rights." *Brown*, 2015 WL 6482928, at *1. The Court of Appeals then reviewed Petitioner's claim for "plain error" and concluded that Petitioner's substantial rights were not violated. *Id.*

---

[2] When determining whether a state procedural rule was applied in a case, courts look "to the last reasoned state court decision disposing of the claim." *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010) (*en banc*).

The Court of Appeals also determined that there was no violation of the Sixth Amendment, but that comment does not preclude this Court from concluding that Petitioner's claim is procedurally defaulted. As explained in *Harris v. Reed*, 489 U.S. 255 (1989),

> a state court need not fear reaching the merits of a federal claim in an *alternative* holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.

*Id.* at 264 n. 10 (emphasis in original). The "adequate and independent state ground" doctrine "curtails reconsideration of the federal issue on federal habeas as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision." *Id.*

Third, a state procedural rule is an adequate and independent basis for foreclosing federal review of a constitutional claim if the rule is firmly established and regularly followed. *Taylor v. McKee*, 649 F.3d 446, 450-51 (6th Cir. 2011). The rule requiring a formal demand on the record to preserve a speedy trial claim was firmly established and regularly followed long before Petitioner was charged and tried. *See Rogers*, 192 N.W.2d at 641 (stating in 1971 that, "to properly preserve his right to a speedy trial, a defendant must make a formal demand on the record that he be brought to trial").

Fourth, Petitioner has not alleged "cause" for his failure to object in the trial court. As such, he has abandoned the "cause and prejudice" argument. *Wheeler v. Simpson*, 852 F.3d 509, 515 (6th Cir. 2017).

In the absence of "cause and prejudice," a habeas petitioner may pursue a procedurally defaulted claim if he can demonstrate that failure to consider his claim "will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). But "[a] fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). And "[t]o be credible, [a claim of actual innocence] requires [the] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Petitioner has not presented the Court with any new evidence in support of a claim of actual innocence. Accordingly, a miscarriage of justice will not occur as a result of the Court's failure to address the substantive merits of his speedy trial claim. His claim fails because all four procedural-default factors are satisfied.

## B. Sufficiency of the Evidence

Petitioner alleges next that his convictions must be reversed because there was insufficient evidence to prove him guilty beyond a

reasonable doubt.  Pet., ECF No. 1, PageID.92.  Petitioner contends that there was no evidence he was the shooter, there was no DNA or fingerprint evidence to prove that he was a passenger in Heather Brown's car on the night of the shooting, and the police failed to perform a gunshot residue test, which would have shown whether he fired a weapon.  *Id*., PageID.93-94. Petitioner asserts that, at most, the evidence showed he was merely present when the shots were fired.  *Id*., PageID.92, 94.  The Michigan Court of Appeals adjudicated Petitioner's claim on the merits and concluded that the evidence was sufficient to sustain Petitioner's convictions.  *Brown*, 2015 WL 6482928, at *4.

### 1.  Clearly Established Federal Law

In a habeas case, the critical inquiry on review of a challenge to the sufficiency of the evidence supporting a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.  But this inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (internal citations and footnote omitted) (emphases in original).  "Circumstantial evidence may support a conviction, *McKenzie v. Smith,* 326 F.3d 721, 727 (6th Cir.

2003), and such evidence need not remove every reasonable hypothesis except that of guilt. *Walker v. Russell,* 57 F.3d 472, 475 (6th Cir. 1995)." *Apanovitch v. Houk*, 466 F.3d 460, 488 (6th Cir. 2006).

Under AEDPA, moreover, a habeas court's "review of a state-court conviction for sufficiency of the evidence is very limited," *Thomas v. Stephenson*, 898 F.3d 693, 698 (6th Cir. 2018), because *Jackson* claims are "subject to two layers of judicial deference," *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (*per curiam*). First, it is the responsibility of the jury to decide what conclusions should be drawn from the evidence admitted at trial. *Johnson*, 566 U.S. at 651 (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (*per curiam*)). "And second, on habeas review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Id.* (quoting *Smith*, 565 U.S. at 2); *see also Tanner v. Yukins*, 867 F.3d 661, 672 (6th Cir. 2017) (stating that "two layers of deference apply [to a sufficiency-of-the-evidence claim], one to the jury verdict, and one to the state appellate court"), *cert. denied*, 138 S. Ct. 1283 (2018).

## 2. Application

Petitioner is not alleging that the prosecution failed to prove the elements of the crimes for which he was convicted. Instead, he maintains there was insufficient evidence that he was the shooter.

"The identity of a defendant as the perpetrator of the crimes charged is an element of the offense and must be proved beyond a reasonable doubt." *Byrd v. Tessmer*, 82 F. App'x 147, 150 (6th Cir. 2003) (citing *People v. Turrell*, 181 N.W.2d 655, 656 (1970)). The testimony at Petitioner's trial, however, was sufficient to allow a reasonable trier of fact to establish beyond a reasonable doubt that he was the shooter. As correctly summarized by the state court:

> Talton testified that on the night of January 31, 2012, shortly after she returned home from her visit to a tax office, she and her daughter were in the living room at her house on West Ferguson. Talton heard the sound of screeching tires near her house, looked out the living room window, and saw a burgundy car drive past. Approximately a minute later, Talton heard knocking on the front door, asked who had knocked, and a man's voice responded, "Jerrod, from the tax place." Talton opened the front door and observed a burgundy car with a spoiler parked in front of her house, the front passenger door of the car was open, two children were in the backseat, and defendant was standing on the front porch, less than a foot away from her. Defendant asked Talton whether she had seen a missing cell phone at the tax office, and Talton advised defendant that she had discovered a phone in the bathroom and returned it to a male office manager. Talton also recounted that as she had begun closing the front door, she observed Heather Brown get out from the driver's side door of the burgundy car and approach Talton's house, while defendant remained standing on the front porch. Talton next heard indistinguishable conversation between defendant and Heather Brown, which was immediately followed by seven or eight gunshots, causing her to hide on the living room floor until the gunshots ceased. Talton conceded that she had closed her front door before the gunfire erupted, that she did not know who fired a gun, and that she never saw a gun or other weapon in defendant's possession. However, she explained that defendant

13

had been the closest person to the front door when the shooting started and that she thought defendant was the shooter.

Talton's neighbors, Jovan Bonga and Brittany Henderson, were conversing on the sidewalk in front of Bonga's house when Bonga noticed a red Taurus twice drive down the street. Bonga observed the Taurus parked in front of Talton's house, heard the sound of a door closing on the passenger side of the Taurus closest to Talton's house, and later saw a person of an indeterminate gender standing in the grass of Talton's front yard approximately 10 feet from her house. A few minutes later, he heard two or three gunshots. He then saw in front of Talton's house the gunfire that resulted from three or four more gunshots fired by the same person in Talton's front yard. He then saw the shooter get inside the Taurus on the front passenger side. Bonga added that the gunshots sounded like they all emanated from the same type of gun, and he denied having seen anyone besides the person who stood in Talton's front yard.

Henderson testified that she too saw an older-style burgundy Taurus twice drive past on West Ferguson Street and park in front of Talton's house. Henderson also saw someone standing on the sidewalk in front of Talton's house, who appeared to be a man because of "the way his body was built." Henderson saw fire from a gun that the man in front of Talton's house had pointed directly at the house. She estimated that she heard and saw five gunshots, and the man entered the Taurus's front passenger door before the car drove away. Henderson denied having seen the Taurus's driver leave the car.

Sheila Arrington testified that she learned about Heather Brown's missing cell phone and drove Heather Brown's red Taurus, with Cortland Brown who is Heather Brown's youngest son, to the tax office where Heather Brown worked. Arrington recounted that Heather Brown and Courtland Brown left the tax office together, with Heather Brown driving the Taurus and Arrington and Courtland Brown in the back seat. Defendant later entered the front passenger seat. Heather Brown advised defendant that she could not find her cell phone. The Taurus stopped in front of a

14

house on Ferguson Street. Heather Brown yelled at defendant about her keys. Then Heather Brown and defendant simultaneously left the Taurus, and within the next 10 minutes, while Arrington and Courtland Brown still occupied the back seat of the Taurus, Arrington heard between one and five nearby gunshots. Defendant then reentered the Taurus's front passenger seat, Heather Brown returned to the driver's seat, and the Taurus drove away.

*Brown*, 2015 WL 6482928, at *3-*4.

A rational trier of fact could have concluded from the combined testimony of Talton, Bonga, Henderson, and Arrington that Petitioner fired the gunshots at Talton's home. As the Michigan Court of Appeals pointed out, all four of those witnesses,

> agreed that the Taurus had parked directly in front of Talton's house. Talton repeatedly identified defendant as the person who knocked on her door on the evening of January 31, 2012, and the person closest to her house immediately before the gunfire began. Although no one testified to having specifically observed defendant leave the Taurus, Talton's testimony to seeing the front passenger door of the Taurus standing open when defendant appeared on the porch was strong circumstantial evidence that he had occupied that position. Arrington also described defendant's presence in the front passenger seat of the Taurus shortly before the shooting. Although Talton never saw defendant fire gunshots at her house, Bonga and Henderson noticed the sole visible occupant of the Taurus fire the gunshots before reentering the Taurus's front passenger door. Henderson repeatedly opined that the shooter appeared to be a man.

*Id*. at *4. There was additional evidence that the seven casings at the crime scene came from one gun, 11/26/13 Trial Tr., ECF No. 8-28,

PageID.2335-2336, and that the gunshots were fired close in time, *id.*, PageID.2408.

Petitioner presented evidence that he was at a friend's house on Cruse Street at the time of the shooting (estimated at 8:44 p.m.) and that he subsequently went to a house where his father was playing poker. *See* 12/3/13 Trial Tr., ECF No. 8-31, PageID. 2770, 2780 (D'errah Tyler's testimony that Petitioner was outside her home on Cruse Street at the time of the shooting); *id.*, PageID.2808-2809 (Tristan Thomas's testimony that Petitioner arrived at the poker party on Maplelawn between 8:00 p.m. and 9:00 p.m. on the night of the shooting).

Tyler, however, was inconsistent when she described the timing of events on the night in question.  In addition, evidence derived from cell phone data established that Petitioner's cell phone was not on Cruse Street at the time of the shooting, *id.*, PageID.2844-2845, even though there was other evidence that he was using his phone that evening.

Furthermore, the *Jackson* "standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.  A reviewing court "does not reweigh the evidence or redetermine the credibility of witnesses . . . ." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003).  "It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony." *Id.*

16

While the lack of eyewitness identification in an otherwise close case is concerning, the Court is cognizant that the Sixth Circuit "has never held that eyewitness evidence is needed to secure a conviction." *United States v. Parks*, 278 F. App'x 527, 536 (6th Cir. 2008). Here, a rational trier of fact could have concluded from the evidence taken in the light most favorable to the prosecution that Petitioner was the shooter. Additionally, the state court's conclusion—that  the evidence was sufficient to support Petitioner's convictions—is objectively reasonable. Petitioner, therefore, has no right to relief on his challenge to the sufficiency of the evidence.

### C. Perjury

Petitioner's third claim alleges that the prosecutor violated his right to due process by allowing Talton to give perjured testimony and by failing to correct the perjury. Pet., ECF No. 1, PageID.95-97. The alleged perjury was Talton's testimony that she did not know whether the cell phone found in her car was the one she found at the tax office, that she did not know how the phone got in her car, and that the phone somehow magically got in her vehicle. 11/20/13 Jury Trial, ECF No. 8-25, PageID.1911-1912. She consistently maintained that she found the phone in a restroom at the tax office and that she then turned the phone over to an employee named "Al" at the tax office. *Id.*, PageID.at 1875-1876, 1881, 1884, 1901, 1907-1909. Respondent asserts that Petitioner's claim is procedurally defaulted because the Michigan Court of Appeals

reviewed the claim for "plain error."  Answer, ECF No. 7, PageID.112, 151.

## 1.  Procedural Default

As noted above, a habeas claim is procedurally defaulted if:  (1) the petitioner failed to comply with an applicable state procedural rule; (2) the state courts enforced the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim, and (4) the petitioner fails to demonstrate cause for his error and actual prejudice or that a miscarriage of justice will occur if the habeas court fails to adjudicate his claim on the merits.  *Henderson*, 730 F.3d at 560.

These factors are satisfied as to Petitioner's claim about the prosecutor's alleged use of perjured testimony.  First, the relevant state procedural rule states that, "[t]o preserve a claim of prosecutorial misconduct, the defendant must make a timely and specific objection to the conduct at trial."  *People v. Clark*, __ N.W.2d __, __, No. 343607, 2019 WL 6138242, at *16 (Mich. Ct. App. Nov. 19, 2019) (citing *People v. Brown*, 811 N.W.2d 531 (Mich. Ct. App.  2011)).  Petitioner violated this rule by not objecting at trial to the prosecutor's alleged use of perjury and alleged failure to correct the disputed testimony.

Second, the Michigan Court of Appeals was the last state court to render a reasoned opinion in Petitioner's case and it enforced the rule by reviewing Petitioner's claim for "plain error" affecting substantial rights,

because Petitioner did not object or otherwise raise the issue at trial. *Brown*, 2015 WL 6482928, at *4.[3]

Third, the rule requiring a contemporaneous objection to a prosecutor's conduct was firmly established and regularly followed before Petitioner's trial. *See, e.g., People v. Thomas*, 678 N.W.2d 631, 635 (Mich. Ct. App. 2004) (stating that, because the defendant failed to object to the prosecutor's statements, his claims were reviewed for plain error that affected substantial rights). Therefore, the state procedural rule was an adequate and independent basis for rejecting Petitioner's claim.

Fourth, Petitioner has abandoned the "cause and prejudice" argument, *Wheeler,* 852 F.3d at 515, and he has not shown that a fundamental miscarriage of justice will occur if the Court declined to address his claim on the merits. His prosecutorial-misconduct claim is procedurally defaulted because all four elements of a procedurally defaulted claim have been satisfied.

## 2. The Merits

Petitioner's claim also lacks merit. It is true that "deliberate deception of a court and jurors by the presentation of known false

---

[3] The state court also stated that: Petitioner had failed to substantiate his contention that the prosecutor knowingly introduced false testimony to obtain his conviction; the alleged perjury did not affect the outcome of the case; and Petitioner's right to a fair trial was not violated. *Id.* at *5. But that alternative ruling does not preclude this Court from concluding that Petitioner's claim is procedurally defaulted. *Harris*, 489 U.S. at 264 n.10.

evidence is incompatible with 'rudimentary demands of justice.'" *Giglio v. United States*, 405 U.S. 150, 153 (1972) (quoting *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)). "The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *Napue v. Illinois*, 360 U.S. 264, 269 (1959). Nevertheless, "[a] conviction obtained through the knowing use of perjured testimony must be set aside [only] if 'the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury.'" *United States v. Fields*, 763 F.3d 443, 462 (6th Cir. 2014) (quoting *Giglio,* 405 U.S. at 154).

To prove that the prosecutor's failure to correct false testimony violated due process rights, a petitioner must demonstrate that: (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false. *Rosencrantz v. Lafler*, 568 F.3d 577, 583–84 (6th Cir. 2009); *see also Amos v. Renico*, 683 F.3d 720, 728 (6th Cir. 2012). "[O]rdinarily, claims of perjury must also overcome a harmless-error analysis." *Monea v. United States*, 914 F.3d 414, 421 (6th Cir. 2019). On habeas review, an error is harmless unless it had a "substantial and injurious effect or influence" on the verdict. *Brecht v. Abrahamson,* 507 U.S. 619, 637-38 (1993).

Here, although there was evidence that Talton lied when she denied stealing Heather Brown's cell phone, there is no indication that the prosecutor deliberately tried to deceive the jury or that the alleged perjury was material. Talton acknowledged that the cell phone found in

her car was not registered to her or anyone in her family, 11/20/13 Trial Tr., ECF No. 8-25, PageID.1912, and the officer in charge of the case testified that all the evidence indicated that the phone belonged to Ms. Brown.  12/2/13 Trial Tr., ECF No. 8-30, PageID.2688.  The officer pointed out that the photos stored on the phone were photos of Ms. Brown's family and that there were no photos of Talton's family on the phone.  *Id.*

The prosecutor subsequently admitted in her closing argument that Talton may have stolen the cell phone and lied about it.  12/4/13 Trial Tr., ECF No. 8-32, PageID.2875.  Defense counsel also maintained that Talton had lied about the phone.  *Id.*, PageID 2908-2909.

The Michigan Court of Appeals reasonably concluded from the record that the false testimony did not affect the outcome of the case and that Petitioner's right to a fair trial was not violated by the allegedly false testimony.  Likewise, the alleged perjury could not have had a substantial and injurious effect or influence on the jury's verdict, given the testimony and the attorneys' remarks suggesting that Talton lied about the phone.  The alleged perjury was not material evidence, and the alleged constitutional error was harmless.  Therefore, Petitioner's claim lacks merit in addition to being procedurally defaulted.

### D.  Petitioner's Cell Phone

Petitioner alleges that the police seized his cell phone without a warrant and, therefore, the trial court improperly admitted the phone in

21

evidence.  Pet., ECF No. 1, PageID.51, 59.  Petitioner did not develop this claim in his habeas petition, *see id*., but in state court, he argued that the trial court should have suppressed his cell phone and any evidence derived from it because the police did not possess a search warrant when they arrested him, searched him, and seized his phone.

The trial court determined before Petitioner's first trial that the cell phone found in Petitioner's pants pocket on the night of his arrest was admissible in evidence because the phone came within the scope of an applicable search warrant.  8/27/12 Trial Tr., ECF No. 8-3, PageID.212-214.  The Michigan Court of Appeals agreed.  *Brown*, 2015 WL 6482928, at *6.

The Court of Appeals also found no merit in Petitioner's argument that the police undertook a warrantless review of the contents of his cell phone.  The Court of Appeals noted that Sergeant Brian Bowser had testified that the police obtained a search warrant before the police attempted to search the contents of the phone and that they failed to recover any information from the phone.  *Id*. at *7; *see also* 12/2/13 Trial Tr., ECF No. 8-30, PageID.2657-2659.

Petitioner's claim is not cognizable on habeas corpus review because the Supreme Court stated in *Stone v. Powell*, 428 U.S. 465 (1976), that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained

in an unconstitutional search or seizure was introduced at his trial." *Id.* at 494 (internal and end footnotes omitted). "[T]he Powell 'opportunity for full and fair consideration' means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim." *Good v. Berghuis*, 729 F.3d 636, 639 (6th Cir. 2013).

The state court record indicates that Petitioner filed a motion to suppress evidence of his phone and initially succeeded in having evidence of the phone suppressed. *See* 8/23/12 Mot. Hr'g Tr., ECF No. 8-2, PageID.199. When the prosecutor moved for reconsideration of the trial court's ruling, Petitioner had an opportunity to respond at a hearing on the prosecutor's motion. *Id.*, PageID.202-204.

The hearing resumed on the first day of the first trial, and Petitioner had an additional opportunity then to argue in support of his motion to suppress the phone. 8/27/12 Trial Tr., ECF No. 8-3, PageID.213. Although the trial court granted the prosecutor's motion for reconsideration and ruled that Petitioner's phone could be admitted in evidence, Petitioner was able to raise his Fourth Amendment claim again on appeal from his convictions.

Petitioner's presentation of his claim to the state courts suffices to preclude review of the claim in a habeas corpus petition. *Good*, 729 F.3d at 640; *see also Rashad v. Lafler*, 675 F.3d 564, 570 (6th Cir. 2012) (stating that, because the petitioner had ample opportunities to present

23

his claim in state court, he was precluded from obtaining habeas relief on the claim).  Therefore, his Fourth Amendment claim is not cognizable here.  The claim also lacks merit because the search warrant listed "[a]ny electronic storage devices, such as *cell phones*, SIM cards, [and] flash drives." 8/27/12 Trial Tr., ECF No. 8-3, PageID.212 (emphasis added), and the contents of the phone were not revealed at trial.

### E.  The Arraignment

Petitioner's fifth claim alleges that his constitutional rights were violated because he was not brought before a judge or magistrate within forty-eight hours of his warrantless arrest.  Pet., ECF No. 1, PageID.16, 20, 45.  He claims that he was arraigned four days after his arrest and interrogated more than once during those four days.  *Id*., PageID.45-46.

Respondent argues that this claim is procedurally defaulted and not cognizable on habeas review.  Answer, ECF No. 7, PageID.112-113, 164-66.  The Court agrees.  The claim is procedurally defaulted because there is a "general and longstanding rule in Michigan that 'issues that are not properly raised before a trial court cannot be raised on appeal absent compelling or extraordinary circumstances.'" *People v. Cain*, 869 N.W.2d 829, 832 (Mich. 2015) (quoting *People v. Grant,* 520 N.W.2d 123, 128 (1994)).  Petitioner violated this rule by not objecting in the trial court to the delay between his arrest and his arraignment.

The Michigan Court of Appeals enforced the rule by stating that Petitioner "neglected to raise any challenge to an improper delay in his

arraignment in the trial court" and, therefore, the "issue qualifie[d] as unpreserved for appellate review." *Brown*, 2015 WL 6482928, at *7. The Court of Appeals also found no merit in the claim because Petitioner had "fail[ed] to substantiate that an unreasonable postarrest delay directly led to the admission of any specific evidence that prejudiced his substantial rights." *Id.* at *8.

The rule requiring a contemporaneous objection was an adequate and independent basis for denying review of Petitioner's claim because the Michigan Supreme "Court 'has long recognized the importance of preserving issues for appellate review.'" *Cain*, 869 N.W.2d at 832-883. Petitioner has not alleged "cause" for his procedural default or that a miscarriage of justice will occur if the Court declines to address the merits of his claim. Thus, his claim is procedurally defaulted.

The claim also is not cognizable on habeas review, because it raises a Fourth Amendment issue, and Petitioner had an opportunity to raise the claim in state court. *Stone*, 428 U.S. at 494; *Good*, 729 F.3d at 639. Further, even if Petitioner was illegally detained in violation of the Fourth Amendment, an "illegal arrest or detention does not void a subsequent conviction." *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975). "Not all wrongful detentions violate due process" either, because "'[t]he Constitution does not guarantee that only the guilty will be arrested.'" *Seales v. City of Detroit, Michigan*, 959 F.3d 235, 240 (6th Cir. 2020) (quoting *Baker v. McCollan*, 443 U.S. 137, 145 (1979)).

The Michigan Court of Appeals, moreover, correctly determined that Petitioner's claim lacked merit because he failed to substantiate that an unreasonable post-arrest delay led to the admission of any prejudicial evidence. *Brown*, 2015 WL 6482928, at *8. A "delay in arraignment, standing alone, without a showing of prejudice . . . present[s] no federal question," *Streeter v. Craven*, 418 F.2d 273, 274 (9th Cir. 1969), and Petitioner has not shown that he was prejudiced by the delay in arraigning him. Although he does say that he was interrogated several times, he apparently did not confess to the crimes during the interrogations, and it does not appear that the prosecution gained a tactical benefit from the delay. Absent any prejudice caused by the delay, Petitioner is not entitled to relief on his claim. *Kirkland v. Maxwell*, 369 F.2d 687, 688 (6th Cir. 1966).

Petitioner's claim is procedurally defaulted, not cognizable on habeas review, and meritless. He has no right to relief on the claim.

### F. Trial Counsel

In his sixth and final claim, Petitioner alleges that he was denied his Sixth Amendment right to effective assistance of counsel because his trial attorney failed to challenge the criminal complaint and warrant at the preliminary examination. Pet., ECF No. 1, PageID.46-48. According to Petitioner, the complaint was defective because it contained conclusory statements and no underlying facts. *Id.*, PageID.47. Petitioner also alleges that the complaint was inadequate to support the

26

arrest warrant. *Id.*, PageID.47-48. The Michigan Court of Appeals concluded on review of Petitioner's claim that he had failed to substantiate ineffective assistance of counsel. *Brown*, 2015 WL 6482928, at *8.

### 1. Clearly Established Federal Law

To prevail on his claim about trial counsel, Petitioner must show that "counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The deficient-performance prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688.

The "prejudice" prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. Petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

"The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (internal and end citations omitted). "When §

27

2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland'*s deferential standard." *Id*.

## 2. Application

The Michigan Court of Appeals determined that the criminal complaint in Petitioner's case satisfied the requirements set forth in Michigan Court Rule 6.101(A) and (B), and that it served to properly commence the judicial proceedings. *Brown*, 2015 WL 6482928, at *9. The Court of Appeals also opined that defense counsel had no basis for objecting because both the complaint and the warrant contained the proper information. *Id*. at *10. Finally, the Court stated that the failure to object did not prejudice Petitioner because it had no impact on the trial court's jurisdiction to try Petitioner.

The state court's interpretation of state law binds this Court sitting in habeas corpus, *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005), and because the state court determined that the complaint and warrant were proper under state law, defense counsel was not ineffective for failing to object to the complaint and the warrant. "The failure to raise a meritless claim does not constitute ineffective assistance of counsel," *Tackett v. Trierweiler*, 956 F.3d 358, 375 (6th Cir. 2020), and because Petitioner's underlying claim about the complaint and warrant lacks merit, his trial attorney's failure to raise that issue does not constitute ineffective assistance of counsel, *see id.*

To the extent Petitioner is alleging that the state court never acquired jurisdiction over his criminal case due to the allegedly defective complaint and warrant, that claim also lacks merit. Whether the state trial court was "vested with jurisdiction under state law is a function of the state courts, not the federal judiciary." *Willis v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976). And the "state court's interpretation of state jurisdictional issues conclusively establishes jurisdiction for purposes of federal habeas review." *Strunk v. Martin*, 27 F. App'x 473, 475 (6th Cir. 2001).

## IV. CONCLUSION

Based on the foregoing discussion, the state appellate court's rejection of Petitioner's claims was not contrary to clearly established Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts. Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

The Court also **DECLINES** to issue a certificate of appealability because reasonable jurists could not disagree with the Court's resolution of Petitioner's constitutional claims, nor conclude that the issues presented deserve encouragement to proceed further. *See Miller-El*, 537 U.S. at 327. Nevertheless, if Petitioner decides to appeal this Court's decision, he may proceed *in forma pauperis* because an appeal could be taken in good faith.

**SO ORDERED**.

Dated: October 30, 2020
    s/Terrence G. Berg
    TERRENCE G. BERG
    UNITED STATES DISTRICT JUDGE